ANDREW, J.T.C.
This is a state tax action in which plaintiff Futurevision Cable Enterprises, Inc. contests assessments made pursuant to the Sales and Use Tax Act, N.J.S.A. 54:32B-1 et seq., and the Business Personal Property Tax Act, N.J.S.A. 54:11A-1 et seq., by defendant Director of the Division of Taxation. One issue presented in this case is the question of plaintiff’s liability for sales and use tax on its purchases of converters.[1] Also at issue is plaintiff’s liability for business personal property taxes in their entirety, or alternatively, its liability for that portion of the tax attributable to its labor and overhead cost incurred in the installation of cable on utility poles and that portion attributable to its converters. The parties have stipulated the following facts.
Plaintiff is a New Jersey corporation with its principal place of business located in Eatontown, New Jersey. Since September 1978, plaintiff has been a wholly owned subsidiary of Storer Broadcasting Company, a national communications firm with its headquarters in Miami, Florida. Plaintiff’s principal activity is the provision to its subscribers of communications services by means of a coaxial cable, commonly referred to as cable television. Plaintiff presently operates four cable television systems within New Jersey, serving over 50,000 subscribers located in several municipalities.
The cable system constructed and operated by plaintiff is designed to deliver certain kinds of signals, described later in more detail, from a central point through its cable and related equipment to subscribers. From the central point, commonly known as the “head-end” or “signal processing center,” signals are sent out over a system of coaxial cables distributed throughout the community and terminate at the subscriber’s residence (or place of business). On its books and in its records, plaintiff *154 capitalized the labor and overhead costs associated with the construction of its cable television system. Plaintiff also capitalized these items on its federal income tax returns, and therefore included them in the depreciable cost basis of its cable television system.
At the subscriber’s location a “drop cable” runs from the main distribution cable on a utility pole to the subscriber’s residence. The drop cable is fed into the residence and is attached to a terminal piece of equipment called a converter, which is connected directly to the subscriber’s television set. After installation, the subscriber utilizes the channel selector on the converter to choose programming, which includes off-the-air signals received from New York and Philadelphia stations, supplemented by other types of programming such as news services, children’s shows, sports channels and channels devoted to community use.
The converter is installed in a subscriber’s residence when plaintiff connects the subscriber’s cable to plaintiff’s cable system. Service is provided to subscribers on a month-to-month basis. The converter remains in the possession of the subscriber until the service is terminated. The subscriber is then required to return the converter to plaintiff, who retains title to the converter at all times.
At the time of installation, the subscriber is charged an installation fee of $10 upon which sales tax is charged by plaintiff and collected from the subscriber. The charge for use of the converter is included in the monthly basic service charge. The actual cost of the converters to plaintiff ranges from $30 to $70. A statement signed by the subscriber at the time of installation states that the value of the converter is $100,[2] which includes a sum based upon the actual cost of the converter, in addition to amounts relating to potential loss of revenues should the converter not be returned to plaintiff.
*155 The “basic service” provided by plaintiff consists generally of off-the-air broadcast stations as well as certain “premium services,” such as movies shown without commercials and other various special programming features.
As a cable television company providing cable television service in New Jersey, plaintiff is regulated by the Office of Cable Television within the New Jersey Board of Public Utilities. See N.J.S.A. 48:5A-1 et seq. Pursuant to the provisions of N.J.S.A. 48:5A-4, however, plaintiff is not a public utility. Plaintiff’s rates for basic service are regulated by the Board of Public Utilities. Its rates for premium services are not regulated.
Pursuant to N.J.S.A. 48:5A-30, certain of plaintiff’s revenues are subject to assessment by the municipalities in which it is franchised. Recurring charges in the nature of cable television reception service are subject to a fee of 2%. This assessment is not imposed on revenues from installation charges, reconnection charges, premium services or advertising revenues, but is applicable to basic service revenues.
Following a general audit, the Division of Taxation assessed plaintiff $4.60 in sales tax and $2,608.19 in use tax for the period April 1,1976 through March 31,1979, and $30,268.33 in business personal property tax for the tax years 1975 through 1979 inclusive, to which was added, in each case, interest and penalty. Plaintiff paid the tax and one half of the interest, the Division abating the penalty and the remaining interest.
Subsequent to the assessment period, plaintiff paid all taxes in issue and filed protective claims for refunds. Plaintiff has amended its complaint to add these refund claims.
Plaintiff’s records for the period prior to its acquisition by Storer Broadcasting Company in September 1978[3] are incomplete. Plaintiff is able to determine only that approximately $30,000 in converters were purchased during the sales tax assessment period, and therefore claims a refund of $1,500 in sales and *156 use tax. During the period for which it has filed protective refund claims, i.e., 1980, 1981 and 1982, plaintiff’s purchases of converters totalled $3,488,883. Plaintiff claims a refund of sales and use tax amounting to $174,444.15 for this.refund claim period. With regard to the business personal property tax, plaintiff seeks a refund of the entire amount of defendant’s assessment, $30,268.33, as well as $1,661.43 for the period covered by its protective claims, tax years 1980, 1981 and 1982.

Sales and Use Tax

Plaintiff contends that its purchases of converters should be exempt from the tax imposed on the receipts from retail sales.[4] See N.J.S.A. 54:32B-3(a). Plaintiff relies upon N.J.S.A. 54:32B-2(e)(l)(B), which defines retail sale as:
A sale of tangible personal property to any person for any purpose, other than ... for use by that person in performing the services subject to tax under subsection (b) of section (3) where the property so sold becomes a physical component part of the property upon which the services are performed or where the property so sold is later actually transferred to the purchaser of the service in conjunction with the performance of the service subject to tax. [Footnote omitted]
Plaintiff asserts that either the converter becomes a physical component part of the cable system upon which the taxable installation service is performed or that the converter is actually transferred to the purchaser of the service in conjunction with the performance of the taxable installation service. Plaintiff therefore reasons that since its purchases of converters are not within the definition of retail sale they are nontaxable.
Plaintiff notes that the converter is attached, at the time of installation, between the cable line and the subscriber’s television set by means of the drop wire running between the utility *157 pole and the converter. Plaintiff states that, upon installation, the converter becomes a physical component part of the property, (that is, the cable system) upon which, or through which, the service of delivering cable signals is performed. In plaintiffs words, “[T]he converter is a physical component part of the cable system integral to the service for which the subscriber is paying and which the [p]laintiff provides.”
Alternatively, plaintiff argues that it actually transfers the converter to its subscriber. Relying on Dixon v. Russell, 78 N.J.L. 296, 299, 73 A. 51 (Sup.Ct.1909), rev’d on other grounds, 79 N.J.L. 490, 76 A. 982 (E. & A. 1910), plaintiff contends that, even though it retains title to the converter, a change of possession from plaintiff to its subscriber is sufficient to meet the statutory requirements of the exemption.
It is defendant’s position that converters are not used in performing taxable installation services, but, instead, are used in providing the nontaxable service of cable television.[5] He concludes that plaintiff’s purchases of converters are taxable retail sales.
Defendant’s argument is based primarily on his perception of the design of N.J.S.A. 54:32B-2(e)(1). He notes that this section also excludes from the definition of “retail sale” purchases of tangible personal property for the purpose of resale, either as such or as converted into or as a component part of a product produced for sale by the purchaser. The intent of the “sale for resale” exception is that the tax be paid by the ultimate purchaser of the property. Del-Val Pennysaver, Inc. v. Taxation Div. Director, 3 N.J.Tax 164, 172-173 (Tax Ct.1981), rev’d on other grounds, 188 N.J.Super. 108, 456 A.2d 115 (App.Div.1983).
*158 N.J.S.A. 54:32B-2(e)(1)(B), upon which plaintiff relies, excepts from the tax property which is, in effect, resold by the purchaser because its cost is included in the charge for the performance of a taxable service. The tax is then ultimately paid by the purchaser of the service.
Defendant observes that the minimum value of a converter is $30, which amount obviously is not included in the taxable installation charge of $10. In fact, as stipulated by the parties, plaintiff charges for the use of the converters as part of its monthly service fee, which is nontaxable. Ostensibly, plaintiff recovers the cost of the converters through the monthly service charge. Defendant contends, therefore, that the rationale of the sale for resale exemption is not applicable to plaintiff’s purchase of converters.
By way of illustration, defendant points to the New York Sales and Compensating Use Tax Law, New York Tax Law § 1101(b)(4) (McKinney), which defines “retail sale” in exactly the same manner as does N.J.S.A. 54:32B-2(e).[6] The applicable New York regulation gives as examples of property used in performing taxable services: a watch stem used in repairing a watch, grease used in servicing automobiles, and paper used in providing taxable information services. See New York Regulation § 526.6, CCH New York State Tax Rptr. Par. 65-115. Defendant asserts that all these items are not only transferred to the purchaser of the taxable service, but also must be included in the amount charged the purchaser of the service. Defendant also points out that the New York taxing authorities have deemed purchases of converters by cable television companies to be taxable. See Memorandum TSB-M-80 (5)S, CCH New York State Tax Rptr. Par. 66-098.
It seems clear that plaintiff cannot connect a subscriber’s television set to its cable television system without installing a *159 converter in the subscriber’s residence. In a very literal sense, then, plaintiff must “use” the converter to perform its taxable installation service. It is equally clear, however, that plaintiff does not purchase converters for use in performing taxable installation services. Rather, converters are purchased as components of plaintiff’s cable system and are supplied to subscribers at the time of installation. Viewed realistically, the converter is the instrumentality through which plaintiff provides its nontaxable cable television service. Cf. N.J. Bell Tel. v. Taxation Div. Director, supra 152 N.J.Super. at 446, 378 A.2d 38. Plaintiff itself states that the converter is a physical component part of its cable system, integral to the nontaxable service for which the subscriber is paying. In performing its taxable installation service, plaintiff essentially is connecting its entire system, including the converter, to a subscriber’s television set.
The conclusion that converters are not purchased by plaintiff for use in performing a taxable service is supported by the fact that the cost of the converter is not included in the charge for the installation service. Apart from defendant’s persuasive argument that N.J.S.A. 54:32B-2(e)(l)(B) was intended to exempt from the tax only those purchases that would be included in the charge for a taxable service, and thus taxed to the purchaser of the service, plaintiff’s own method of recovering the cost of converters indicates that it regarded the converters as a component of its nontaxable cable television service, and not as part of the taxable installation service.
Since plaintiff did not purchase the converters for use in performing a taxable service, it is not necessary to decide whether the converters become a physical component part of the property upon which the services are performed or whether the converters are actually transferred to the subscriber. Defendant’s assessment of sales and use tax is affirmed.

Business Personal Property Tax

Plaintiff contends (1) that it is not subject to the Business Personal Property Tax, N.J.S.A. 54:11A-1 et seq., or, in the *160 alternative, (2) that it is not liable for the tax on the labor and overhead costs incurred in installing its cable on utility poles, or (3) that it is not liable for the tax on its converters.
I
N.J.S.A. 54:11A-3 imposes the business personal property tax on all personal property used in business in this state which is not expressly exempted or expressly excluded from the operation of the tax. Plaintiff claims an exemption from the tax on the basis that it pays the yearly franchise taxes imposed by N.J.S.A. 48:5A-30, a section of the Cable Television Act, N.J.S.A. 48:5A-1 et seq.
Plaintiff points to N.J.S.A. 54:11A-2(b)(5), which excludes from the definition of “personal property used in business,” and thus from the tax:
... goods and chattels used or held for use in business by any person, partnership, association, or corporation subject to taxation under chapter 4 of the laws of 1940, as amended.
Chapter 4 of the laws of 1940, codified at N.J.S.A. 54:30A-16 et seq., exacts a gross receipts tax from certain public utilities for the franchise to use public streets, highways, roads or other public places. N.J.S.A. 54:30A-18. This tax is in lieu of all other franchise taxes. By the terms of N.J.S.A. 54:11A-2(b)(5), then, those entities subject to taxation pursuant to N.J.S.A. 54:30A-16 et seq. are excluded from the reach of the business personal property tax.
Plaintiff concedes that it is not subject to the public utilities gross receipts tax. Although cable television companies appear to come within the terms of N.J.S.A. 54:30A-18, the Cable Television Act provides that the franchise tax imposed by N.J.S.A. 48:5A-30 is “in lieu of all other franchise taxes and municipal license fees.” Plaintiff pays the tax imposed by N.J.S.A. 48:5A-30 to the municipalities in which it is franchised. Accordingly, it is not subject to the public utilities gross receipts tax, which is also in the nature of a franchise tax.
Plaintiff asserts, however, that the similarity in language of the public utilities gross receipts tax, and the franchise tax *161 imposed by the Cable Television Act, both of which impose a franchise tax in lieu of all other franchise taxes, evidences a legislative intent to include plaintiff within the exclusion from the business personal property tax provided by N.J.S.A. 54:11A-2(b)(5) for those companies subject to the public utilities gross receipts tax.
The general principle pertinent in this case is that exemptions from taxation are to be strictly construed against the claimant, because they represent a departure from the proposition that everyone should bear his just and equal share of the public burden of taxation. Princeton Univ. Press v. Princeton, 35 N.J. 209, 214, 172 A.2d 420 (1961); Julius Roehrs Co. v. Tax Appeals Div., 16 N.J. 493, 497-498, 109 A.2d 611 (1954); Container Ring v. Taxation Div. Director, 1 N.J.Tax 203 (Tax Ct.1980), aff’d o.b. per curiam 4 N.J.Tax 527 (App.Div.1981), certif. den. 87 N.J. 416, 434 A.2d 1090 (1981). This principle is applicable to the taxation of business personal property. Browning-Ferris Industries v. Taxation Div. Director, 3 N.J.Tax 16, 21 (Tax Ct.1981).
N.J.S.A. 54:11A-2(b)(5) excludes from the business personal property tax only the business personal property of an entity subject to the public utility gross receipts tax. Even though the franchise tax imposed by the Cable Television Act is similar to the public utilities gross receipts tax in some respects, a strict construction of N.J.S.A. 54:11A — 2(b)(5) does not permit the exemption which plaintiff claims.
The fact that plaintiff pays the franchise taxes imposed by N.J.S.A. 48:5A-30 in lieu of all other franchise taxes and municipal fees is not relevant here. As defendant emphasizes, the business personal property tax is not a franchise tax, but an ad valorem property tax, that is, a direct tax on property. Cf. Werner Machine Co. v. Taxation Div. Director, 17 N.J. 121, 125-127, 110 A.2d 89 (1954), aff’d 350 U.S. 492, 76 S.Ct. 534, 100 L.Ed. 634 (1956). The Cable Television Act does not exempt plaintiff from the tax in issue. Plaintiff, therefore, is neither *162 expressly exempted nor expressly excluded from the imposition of the business personal property tax.
II
Plaintiff alternatively argues that if it is subject to the business personal property tax certain items which defendant has included in his. assessment should be exempt.
Plaintiff first contends that defendant’s regulation N.J.A.C. 18:9-4.2(a)(1) invalidly and inappropriately expands the pertinent statute because it includes as part of the original cost of the property the capitalized labor and overhead costs of placing plaintiff’s cables on utility poles.
N.J.S.A. 54:11A-5 defines the taxable value of business personal property as 50% of the fair value of such property. N.J.S.A. 54:11A-4, in turn, defines “fair value:”
The fair value of personal property used in business shall be the original cost thereof. The director may promulgate uniform rules and regulations for the determination and reporting of such costs. Where the books and records of the person assessed do not reflect the original cost of such property, the taxpayer shall from all information within his possession estimate the original cost thereof and shall annex to his return a statement which shall show the basis upon which he determined such estimate of original cost. Where a taxpayer has failed to report the original cost of any item of such property or has failed to make an estimate thereof, the director, from all information available to him may estimate such cost and assess the tax for the tax year in question.
N.J.S.A. 54:11A-2(c) provides in relevant part that:
“Original cost” with respect to any item of personal property shall mean: (1) In the case of acquisition by purchase, the actual cost to the purchaser of acquiring the property;
The original cost of any item of personal property shall also include the actual cost to the person acquiring such property of any capital expenditures with respect thereto by way of additions or improvements....
Pursuant to the authority granted him by N.J.S.A. 54:11A-4, defendant promulgated N.J.A.C. 18:9-4.2, which states in relevant part:
The original cost of business personal property is determined in the following manner:
*163 (a) Property acquired by purchase. The original cost of business personal property acquired by purchase is the actual cost in money of that property to a taxpayer resulting from an arm’s length transaction and includes not only the entire purchase price but also all the expenditures necessarily incurred in the preparation and installation of the property for operational use in the business. 1. The typical expenditures to be included in determining the actual cost of the property would be the cost of the property and any installation charges, freight charges, insurance in transit, sales tax and other charges related to the asset and usually capitalized for Federal Income Tax purposes....
The regulation is applicable since the expenditures incurred in the placement of plaintiffs cables on utility poles are required to prepare these cables for operational use and additionally because plaintiff admittedly has capitalized on its books and in its records, and for federal income tax purposes, the costs in issue here. Plaintiff contends, however, that N.J.A.C. 18:9-4.2 is an invalid exercise of defendant’s authority because it purports to extend the statute beyond the taxation of tangible goods and chattels to the taxation of intangibles.[7] See N.J.S.A. 54:11A-2(b), which defines “personal property used in business” as tangible goods and chattels used or held for use in business. Plaintiff asserts that only the actual dollars used to purchase the cable may be used to compute the original cost.
Defendant, on the other hand, contends that N.J.A.C. 18:9-4.2 is a valid exercise of the authority granted him by N.J.S.A. 54:11A-4, and that the capitalized expenditures for labor and overhead involved in the installation of cable on utility poles may properly be included in the original cost of the cable.
While N.J.S.A. 54:11A-2(c)(l) defines “original cost” to be the actual cost to the purchaser of acquiring the property, defendant is given a broad grant of authority to promulgate regulations for the determination and reporting of original cost. *164 N.J.S.A. 54:11A-4. An administrative agency may not, however, give a statute any greater effect than its language allows. Kingsley v. Hawthorne Fabrics, 41 N.J. 521, 528, 197 A.2d 673 (1964). This is particularly true with respect to tax statutes. Ibid.
Standards applicable to judicial review of the validity of regulations promulgated by an administrative agency were summarized by our Supreme Court in New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 560-563, 384 A.2d 795 (1978). Those pertinent to the present case are:
(1) Administrative regulations are to be accorded a presumption of reasonableness and the attacking party bears the burden of demonstrating that the regulations are arbitrary, capricious, unduly onerous or otherwise unreasonable. Id. at 561, 384 A.2d 795.
(2) Regulations must be within the fair contemplation of the enabling statute, but the court is not confined to a consideration of the statutory authority for a particular regulation, but may consider the entire enabling legislation. Id. at 561-562, 384 A.2d 795.
(3) The grant of authority to an administrative agency is to be liberally construed in order to enable the agency to accomplish its statutory responsibilities, and the court should readily imply such incidental powers as are necessary to effectuate fully the legislative intent. Id. at 562, 384 A.2d 795.
(4) Courts are not free to substitute their own judgment as to the wisdom of a particular administrative action for that of the agency so long as that action is statutorily authorized and not otherwise defective because arbitrary or unreasonable. Id. at 562-563, 384 A.2d 795.
See also Ski Haus, Inc. v. Taxation Div. Director, 5 N.J.Tax 26, 31 (Tax Ct.1982); Sorensen v. Taxation Div. Director, 2 N.J.Tax 470, 474-475, 446 A.2d 213 (Tax Ct.1981).
Applying these standards to the present case, defendant’s inclusion of the capitalized labor and overhead costs associated with the installation of cable on utility poles in the original cost of the cable is a valid exercise of the authority granted to him by the statute.
The Legislature intended to tax tangible goods and chattels used in business. N.J.S.A. 54:11A-2(b). While the costs in issue were not what was charged plaintiff upon its purchase of cable, the costs were necessarily incurred in order that plaintiff could use the cable in its business. The actual cost to plaintiff of the cable used in its business, including those costs incurred to make the cable usable, is within the fair contemplation of the statute.
*165 The fact that plaintiff capitalized these costs on its books and in its records, and for federal income tax purposes,[8] indicates that plaintiff itself regarded these costs as part of the “actual” cost of the cable, and demonstrates the reasonableness of including such capitalized costs in the original cost of property in defendant’s regulation. N.J.S.A. 54:11A-4 indicates that a taxpayer’s books and records are the primary source for a determination of original cost.[9]
In short, the regulation was statutorily authorized, and plaintiff has not met its burden of establishing that the regulation is arbitrary, capricious, unduly onerous or otherwise unreasonable. N.J.A.C. 18:9-4.2(a)(1) validly interprets the statutory phrases “original cost” and “actual cost.” Accordingly, plaintiff’s capitalized labor and overhead costs associated with the installation of its cable on utility poles were properly included in the original cost of the cable, and are therefore subject to tax.
Ill
Finally, plaintiff contends that its converters are exempt from the business personal property tax. N.J.S.A. 54:11A-2(b)(l) excludes from the definition of business personal property:
*166 ... goods and chattels held as inventory, including raw materials, finished and partially finished products of manufacturers and processors, supplies and materials used or consumed in production, small tools, and goods and chattels held for sale, resale, leasing or to be furnished under contracts of service.... [Emphasis supplied].
Plaintiff relies on the emphasized phrase, arguing that it supplies converters as part of its contracts to provide cable television service to its subscribers.[10] It is defendant’s contention that N.J.S.A. 54:11A-2(b)(l) exempts from the tax only property, otherwise taxable, which is not yet in actual profit-generating use in the taxpayer’s business.
Defendant notes that the exclusion for goods and chattels to be furnished under contracts of service appears in the same statutory section in which goods and chattels held as inventory are excluded. He further emphasizes that the statutory words relied on by plaintiff exclude from the tax only those goods and chattels to be furnished under contracts of service. Defendant concludes that if the exclusion were intended to apply to goods already furnished under contracts of service, the words “to be” would not be a part of the statutory language.
By way of additional support, defendant relies on his regulations,[11] which provide, in pertinent part:
Tangible personal property of a taxpayer held for leasing or which is to be furnished as part of a service contract is not subject to the tax until such property is in the actual possession of a lessee under a contract of lease.... [N.J.A.C. 18:9-3.5(a) ]
Tangible personal property leased under a contract of lease made prior to January 1,1977, is subject to assessment and taxation when in the possession of the lessee on October 1 of the pretax year.... [N.J.A.C. 18:9-2.4].
*167 Defendant concedes that plaintiff may be entitled to an exclusion from business personal property tax for converters held in inventory on each business personal property tax assessment date. He argues, however, that since plaintiff is unable to establish what portion of the assessment is attributable to converters held in inventory, and since the exclusion applies only to goods held in inventory, his assessment should be upheld.
Plaintiff responds that, in accordance with rules of statutory construction, for which it cites no authority, it is presumed that the Legislature would not intend to be duplicative in its language. Plaintiff asserts that, if the statutory phrase “goods and chattels ... to be furnished under contracts of service” is interpreted in the manner that defendant contends is proper, the language is duplicative of the statutory phrase “goods and chattels held as inventory.” It concludes that the Legislature must have intended to exclude from the tax goods purchased with the intent to furnish them under contracts of service, including goods actually so furnished.
Plaintiff’s argument is not convincing. N.J.S.A. 54:11A-2(b)(1) evidences an intent to exclude from the tax only business personal property not yet being used to generate business revenues. Rather than being duplicative, the statutory language clearly indicates that all such property, including goods held as production inventory, offered for sale, resale or lease, or to be furnished under contracts of service, is excluded. While all of the categories of property listed in N.J.S.A. 54:11A-2(b)(1) might be broadly regarded as “inventory,” the language is not duplicative merely because it is specific. Accordingly, plaintiff’s converters were properly subject to the business personal property tax. Further, since plaintiff has failed to establish that any of its converters were held in inventory on the relevant assessment dates, defendant’s assessment of tax on the converters must be upheld in its entirety.
In sum, defendant’s assessment in all respects is affirmed, and plaintiff’s refund claims are denied. The Clerk of the Tax Court is directed to enter an appropriate judgment.

 In its initial brief, plaintiff also contested liability for sales and use tax on its purchase of equipment for its cable television system on the basis that its equipment was used to provide telephone or telegraph communication. See N.J.S.A. 54:32B-8.13(c). Plaintiff has since abandoned this claim.

 Prior to or at the time of installation, a subscriber is required to sign a work order which states that the value of the converter is $175. The work order has been superceded by the subscriber statement valuing the converter at $100. The work orders have not yet been changed.

 Plaintiff was formed in 1970 and began serving subscribers shortly thereafter.

 The tax in question is actually the compensating use tax imposed by N.J.S.A. 54:32B-6. Liability for this tax arises from the use within New Jersey of property and services purchased out-of-state to the same extent that they would be subject to the sales tax if they were made in New Jersey. See generally Diamondhead Corp. v. Taxation Div. Director, 4 N.J.Tax 255, 257-258 (Tax Ct.1982). Accordingly, plaintiffs purchases of converters will be discussed in terms of eligibility for exemption from the sales tax.

Unlike the tax on sales of tangible personal property which is imposed on the receipts from all retail sales unless otherwise excepted, the tax on the sale of services is imposed only on certain enumerated services. Compare N.J.S.A. 54:32B-3(a) with N.J.S.A. 54:32B-3(b). While plaintiffs installation services are taxable pursuant to N.J.S.A. 54:32B-3(b)(2), the monthly charges for cable television service do not come within any of the enumerated categories of taxable services.

 It has been stated that the New Jersey Sales and Use Tax Act was drawn from the New York statute. See N.J. Bell Tel. v. Taxation Div. Director, 152 N.J.Super. 442, 450, 378 A.2d 38 (App.Div.1977) (Horn, J., concurring), certif. den. 75 N.J. 594, 384 A.2d 824 (1978).

Plaintiff initially assumed that defendant’s regulation was based upon his conclusion that the costs in issue were includable as additions or improvements to personal property. See N.J.S.A. 54:11A-2(c). Plaintiff therefore argued that N.J.A.C. 18:9-4.2 invalidly included costs which did not constitute additions or improvements. Defendant agrees that the costs in issue did not constitute additions or improvements, and disclaims that the part of N.J.S.A. 54:11A-2(c) relating to additions and improvements was the source of the regulation.

 Defendant notes that such treatment was clearly correct for federal income tax purposes. See Acer Realty Co. v. Commissioner, 132 F.2d 512 (8 Cir.1942); Perlmutter v. Commissioner, 44 T.C. 382 (1965), aff’d on other issue, 373 F.2d 45 (10 Cir.1967); Shainberg v. Commissioner, 33 T.C. 241 (1959).

By way of support for his position that original cost should be determined from the books and records of the taxpayer, defendant refers to the statute which provides for local taxation of telephone and telegraph business personal property. N.J.S.A. 54:4—2.45 provides in relevant part:
The true value of taxable tangible personal property used in business owned by a taxpayer shall be presumed to be the original cost of such property less depreciation as of the assessment date, as shown by the books and records of the person assessed... [Emphasis supplied].
Defendant’s contention that original cost should be defined in the same manner for purposes of the tax at issue in the present case is unpersuasive in view of defendant’s regulation N.J.A.C. 18:9-4.2(h), promulgated pursuant to the Business Personal Property Tax Act. That regulation specifies that original cost is to be determined without regard to depreciation.

Plaintiffs position here as to its converters is inconsistent with its assertion that converters are purchased for use in the performance of installation services with respect to the sales and use tax.

Pursuant to N.J.S.A. 54:11A-3.1, which exempts from the tax machinery or equipment acquired or brought into New Jersey on or after January 1, 1977, defendant’s regulations distinguish between property leased before and after the critical date. It was stipulated by the parties that $30,000 in converters had been purchased prior to January 1, 1977. It was further stipulated that plaintiff could not determine the cost of converters held in inventory as of January 1,1977, or as of any other date during the assessment period.